OPINION
{¶ 1} Appellant, Clyde Bush, appeals from a judgment of the Trumbull County Court of Common Pleas, denying his motion to withdraw his plea. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} In July 1989, appellant was indicted by the Trumbull County Grant Jury on eight counts of rape, in violation of R.C.2907.02(A)(1)(b)(2); one count of attempted rape, which would have been a violation of R.C. 2907.02(A)(1)(b)(2), if committed; and five counts of gross sexual imposition, in violation of R.C. 2907.02(A)(1)(b)(2).
 {¶ 3} On February 21, 1990, in writing and at a plea hearing, appellant pleaded guilty to all counts contained within the indictment. At the hearing, the trial court questioned appellant as to whether he understood the rights he was waiving and explained the charges against him and the penalties these charges carried. Appellant affirmatively indicated that he understood the rights he was waiving, the charges to which he was pleading guilty, and the respective penalties. He also stated that he was entering the plea voluntarily and without any promises made to him by his attorney or by the court. The written plea, signed by appellant, indicated that he was entering the plea voluntarily.
 {¶ 4} According to the plea, appellant agreed to a sentence of life imprisonment on each of Counts 1 through 8; a sentence of five, six, seven, eight, nine, or ten to twenty-five years of imprisonment and up to a $10,000 fine on Count 9; and one to two years of imprisonment and up to a $5,000 fine on each count for Counts 10, 11, 12, 13, and 14.
 {¶ 5} Appellant waived a presentence investigation, and the court proceeded to a sentencing hearing on March 8, 1990. In a judgment entry, dated that same day, the trial court sentenced appellant to life imprisonment on each of Counts 1 through 8, to run concurrently; ten to twenty-five years imprisonment on Count 9, to be served concurrently to the sentences imposed on Counts 1 through 8; and two years imprisonment on each of Counts 10 through 14, to be served concurrently with the sentences on Counts 1 through 9. The trial court also ordered that appellant receive credit for time served since his incarceration in the Trumbull County jail on September 8, 1989.
 {¶ 6} Appellant filed a petition for postconviction relief on October 28, 1991. After conducting a hearing, the trial court denied appellant's motion on June 29, 1993. Thereafter, the trial court issued its findings of fact and conclusions of law on August 23, 1993. Pursuant to Civ.R. 60(B), appellant moved to vacate this judgment, which the trial court denied. From that judgment, appellant appealed to this court. We affirmed the judgment of the trial court. State v. Bush (Feb. 6, 1998), 11th Dist. No. 97-T-0035, 1998 Ohio App. LEXIS 427.
 {¶ 7} The Ohio Adult Parole Authority (the "APA") adopted new parole guidelines on March 1, 1998. See, e.g., Layne v. Ohio Adult ParoleAuth., 97 Ohio St.3d 456, 2002-Ohio-6719, at ¶ 1. "According to the APA, the revised guidelines were intended to `promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making' without removing the opportunity for consideration on an individual case basis." Id.
 {¶ 8} "The APA's new guidelines set forth a `parole guidelines chart' to determine the range of time that a prisoner should serve before being released. When considering inmates for parole[,] the APA relies on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. To use the guidelines chart, each inmate is assigned two numbers that correspond to the above factors, an offense category score and a criminal history/risk score. The assigned numbers are then located on the guidelines chart, which is a grid with the offense category scores along the vertical axis and the criminal history/risk scores along the horizontal axis. At each intersection of the two scores[,] there is an `applicable guidelines range,' indicating the range of months an inmate must serve before being released. During an inmate's first hearing under the new guidelines, the parole board generally gives an inmate a `projected release date,' which presumably falls within the applicable guideline range. The projected release date is the date that the inmate is eligible for release, either on parole or on expiration of sentence." Id. at ¶ 2.
 {¶ 9} On October 15, 1999, after appellant had served approximately 118 months of incarceration, and only nineteen months after the APA's adoption of new parole guidelines, appellant received his first parole hearing. Pursuant to the new guidelines, the Ohio Parole Board ("the parole board") was required to assign appellant an offense category score and a projected release date. See Layne at ¶ 2.
 {¶ 10} The parole board assigned appellant as a Category 12/Risk 0 offender. The parole board concluded that Category 12 was warranted because the offensive behavior involved sexual conduct and/or contact with ten children ranging in age from two to five years old. According to the parole board, there were four rapes, and each would be rated a Category 10 offense and by multiple separate offense rule would equate to a Category 12 offense. The parole board then determined that appellant was not eligible for parole until he served 240 to 300 months of imprisonment. Accordingly, the parole board summarily denied appellant parole because he was not yet eligible.
 {¶ 11} Appellant moved to withdraw his guilty plea on November 10, 2003, and he requested an evidentiary hearing. In his motion, appellant argued that his guilty plea was not entered knowingly and intelligently and he was induced to plead guilty upon the advice from counsel that he would receive ten to a maximum of fifteen years of imprisonment before he would actually be released on parole. Appellant also argued that a manifest injustice was created because the APA and parole board breached this alleged plea agreement by denying him parole in 1999 and assigning him a Category 12 offense score, deeming him eligible for parole in October 2009.
 {¶ 12} In a judgment entry, dated December 12, 2003, the trial court denied appellant's motion. The trial court determined that appellant's plea complied with Crim.R. 11, and he had not established a manifest injustice necessitating withdrawal of his plea.
 {¶ 13} From this judgment, appellant appeals and asserts the following assignment of error for our consideration:
 {¶ 14} "[1.] To the prejudice of the appellant, the trial court committed plain error, abused its discretion and violated appellant's due process rights and equal protection rights under Layne v. Ohio AdultParole Authority, 97 Ohio St.3d 456, 780 N.E.2d 548; theFourteenth Amendment to the United States Constitution and Article One of the Ohio Constitution. When [sic] the Trial court based its findings on the appellants waiver [sic] of rights and the courts compliance [sic] with Crim. R. 11 [sic], ten [10] years before the breach of the plea agreement occurred."[1]
 {¶ 15} In appellant's sole assignment of error, he argues that the trial court abused its discretion by denying his motion to withdraw his plea because the state breached his plea agreement, creating a manifest injustice. Specifically, appellant contends the state, via the parole board, breached his plea agreement by denying him parole in 1999 and determining that he would be eligible for parole in 2009. For the reasons set forth below, appellant's assignment of error is without merit.
 {¶ 16} Crim.R. 32.1 governs withdrawal of a plea. Crim.R. 32.1 provides:
 {¶ 17} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw her plea." See, also, State v. Smith
(1977), 49 Ohio St.2d 261, 264.
 {¶ 18} Thus, to withdraw a guilty or no contest plea after sentencing has taken place, a defendant must show that the withdrawal is necessary to correct a manifest injustice. The burden of establishing the existence of a manifest injustice is on the defendant. Id. at paragraph one of the syllabus; State v. Whiteman, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, at ¶ 17.
 {¶ 19} A trial court is vested with sound discretion to grant or deny a postsentence motion for withdrawal of a plea. State v. Pearson, 11th Dist. Nos. 2002-G-2413 and 2002-G-2414, 2003-Ohio-6962, at ¶ 7. In reaching its decision, a trial court has the discretion to determine the "good faith, credibility and weight of the movant's assertions * * *."Smith at paragraph two of the syllabus. See, also, State v. Caraballo
(1985), 17 Ohio St.3d 66, 67. Importantly, an "`undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.'" State v. Bush, 96 Ohio St.3d 235, 2002-Ohio-3393, at ¶ 14, quoting Smith at paragraph three of the syllabus.
 {¶ 20} Accordingly, our review of a trial court's denial of a motion to withdraw a guilty plea is limited to a determination of whether the trial court abused its discretion. State v. Gibbs (June 9, 2000), 11th Dist. No. 98-T-0190, 2000 Ohio App. LEXIS 2526, at 6-7. An abuse of discretion connotes more than an error of law or judgment; instead, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 21} A negotiated plea agreement is essentially a contract between the state and the defendant. Whiteman at ¶ 38, citing State v. Olivarez
(Mar. 31, 1999), 11th Dist. No. 97-L-288, 1999 Ohio App. LEXIS 1434. Accordingly, "the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement."Olivarez at 7.
 {¶ 22} In State v. Calhoun, 11th Dist. No. 2001-L-021, 2002-Ohio-3371, the defendant argued on appeal that his constitutional rights were violated when the APA breached his plea bargain by placing him in an incorrect offense category. We concluded that "the APA owed no duty to [the defendant] to ensure that he was placed in any certain guideline level. [The defendant] has failed to show that there was any breach ofthe terms of his plea agreement. Further, there is nothing in the recordto indicate that the terms of [the defendant's] release were anywhere inthe plea and there was also no proof that appellant was promised aspecific sentence or a particular guideline level." Id. at ¶ 23. (Emphasis added.)
 {¶ 23} As in Calhoun, appellant's signed guilty plea does not mention parole eligibility. Appellant's written plea affirmatively indicated that he was entering the plea voluntarily with full understanding of the rights he was waiving and the nature of the charges and the penalties of the plea. The written plea is void of any promises relating to release on parole or parole eligibility.
 {¶ 24} Further, at the plea hearing, the trial court engaged in a lengthy dialogue with appellant and complied with the dictates of Crim.R. 11 when accepting appellant's plea. The trial court asked appellant whether he understood the charges against him and the respective penalties. The trial court explained the rights that appellant was waiving, and appellant affirmatively indicated that he understood. Appellant also stated that he discussed the matter with his attorney and was entering the plea willingly and voluntarily, without any promises
made to him by his attorney or by the court. As such, we cannot conclude that the state or the parole board breached appellant's plea agreement by failing to grant him release on parole in 1999. See Calhoun at ¶ 27. Further, the trial court did not abuse its discretion by denying appellant's motion to withdraw his plea based upon an alleged plea agreement entitling him to parole release after ten to fifteen years of imprisonment.
 {¶ 25} In dicta, we also note that the parole board correctly assigned appellant as a Category 12/Risk 0 offender and determined that he was not eligible for parole for a total of 240 to 300 months of imprisonment. To recapitulate, after the imposition of new parole guidelines, the parole board was required to assign appellant an offense category score and provide a projected release date. Layne at ¶ 2.
 {¶ 26} According to the new parole guidelines, Category 10 may be assigned to a rape offender if: (1) serious bodily injury results; (2) the victim is raped by more than one offender; (3) the victim is less than sixteen years of age and the offense is committed by force or threat of force, or by administering any drug/intoxicant surreptitiously or by force, threat of force, or deception; or (4) the victim is kidnapped to facilitate the offense. Appellant pleaded guilty to eight counts of rape, in violation of R.C. 2907.02(A)(1)(b)(2). As such, he admitted that his victims were less than thirteen years of age.
 {¶ 27} As of April 1, 2000, attempted rape is classified as one category lower than the category for the underlying offense. It follows that appellant's conviction for attempted rape fell into Category 9.
 {¶ 28} The parole guidelines also contain the "multiple separate offense" rule, which can increase the offense category when the inmate has committed multiple separate offenses. According to the rule, each offense score category is assigned a number of points. When an inmate has committed multiple separate offenses, the points for each separate offense are added together to arrive at a point total. This point total can be used to place the offensive behavior in a higher offense category.
 {¶ 29} Pursuant to his plea, appellant committed eight Category 10 offenses, each carrying 432 points. His point total for the rape offenses equated to 3456. Appellant's conviction for attempted rape carried 216 total points, bringing his aggregate total points to 3672. According to the "multiple separate offense" rule and the parole guidelines chart, a point total of 1722 equated to a Category 12 offense, while a total of 3444 equated to a Category 13 offense. Technically, appellant could have been assigned as a Category 13 offender; however, the parole board chose to assign him as a Category 12 offender.
 {¶ 30} Following the parole guidelines chart, a Category 12/Risk 0 offender is eligible for release after 240 to 300 total months of imprisonment. Appellant had served 118 months at the time of his parole hearing. As such, appellant was required to serve 122 to 182 additional months of imprisonment before being eligible for parole consideration.
 {¶ 31} Determining that appellant was not yet eligible for parole, the parole board summarily denied appellant parole at that time and determined that he would be eligible in 2009. This was in accord with Ohio law.State v. Hall, 11th Dist. No. 2003-T-0114, 2004-Ohio-6471, at fn. 3.
 {¶ 32} We have considered appellant's argument on its merits because he is acting pro se. However, a motion to withdraw a plea is not a proper remedy in this situation. The Supreme Court of Ohio held in Hattie v.Anderson (1994), 68 Ohio St.3d 232, 235, that "[a] declaratory judgment is the proper remedy to determine the constitutionality or constitutional application of parole guidelines." (Emphasis added.) Id. at 235. Various lower courts have followed this logic, specifically holding that a mandamus or a declaratory judgment action may be a more appropriate remedy if the appellant contends that the APA or the parole board has breached the plea agreement. For example, the First Appellate District has held that the remedy of a claimed breach of a plea agreement "`is not to unravel his plea bargain which, if it were done[,] would subject him to the risk of a new indictment * * * and the possibility of a longer sentence. * * * [A defendant's] remedy is to enforce the plea bargain.'"State v. Stephens, 1st Dist. No. C-020683, 2003-Ohio-6193, at ¶ 8, quoting State v. Young (Aug. 18, 2000), 2d Dist. No. 2000-CA 26, 2000 Ohio App. LEXIS 3714. See, also, Calhoun at ¶ 8; Hall at ¶ 53.
 {¶ 33} "An action for a declaratory judgment pursuant to R.C. Chapter 2721 is a civil action * * *." (Emphasis added.) Sterling Drug, Inc. v.Wickham (1980), 63 Ohio St.2d 16. As such, appellant's motion to withdraw his plea as part of this criminal matter was not a proper remedy to challenge the constitutionality of parole guidelines as applied or to compel the parole board to properly classify him in accord with a plea agreement. Although the parole board is an agent of the state, and bound by the plea agreement, the parole board is not a party in this criminal matter. The trial court had no authority over the parole board.
 {¶ 34} In conclusion, appellant's sole assignment of error is without merit. We hereby affirm the judgment of the trial court.
Ford, P.J., O'Neill, J., concur.
[1] It is important to note that appellant is appealing from the trial court's denial of his motion to withdraw his plea based only upon a violation of the plea agreement. Appellant is not asserting that the trial court erred by denying his motion based upon alleged ineffective assistance of counsel in informing him of the facts and circumstances surrounding his plea.