OPINION
{¶ 1} Appellant, Shawn Smith, appeals from a judgment entry of the Portage County Court of Common Pleas, denying his motion to withdraw his guilty plea and renewed motion for specific performance or in the alternative to vacate his guilty plea. For the reasons that follow, we affirm.
 {¶ 2} On July 17, 1991, appellant was indicted on the following charges: (1) two counts of attempted aggravated murder, both first degree felonies, in violation of R.C. 2923.02(A) and (E); (2) one count of felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(2) and (B); and (3) one count of breaking and entering, a fourth degree felony, in violation of R.C. 2911.13(B) and (C). The counts of attempted aggravated murder and felonious assault included firearm specifications, in violation of R.C. 2941.141 and 2929.71(A).
 {¶ 3} Appellant initially pleaded not guilty and not guilty by reason of insanity to all charges, and this matter was scheduled for a jury trial. However, just prior to trial, appellant filed a written guilty plea. Appellant pleaded guilty to two counts of attempted aggravated murder; one count of felonious assault, with a gun specification; and one count of breaking and entering.
 {¶ 4} Written plea negotiations were also filed with the trial court. This document set forth the plea agreement and explained that, in exchange for appellant's guilty plea, the state agreed to forego prosecuting appellant on burglary charges and dismissed four misdemeanor charges pending in the Kent Municipal Court. The written plea agreement also provided a recommended sentence.
 {¶ 5} The trial court held a change of plea hearing and advised appellant of his constitutional and non-constitutional rights of trial, pursuant to Crim. R. 11(C). Following an oral recitation of the plea agreement, the court asked appellant whether any additional promises had been made to secure his plea. Appellant answered in the negative.
 {¶ 6} On March 16, 1992, the court issued a judgment entry accepting appellant's guilty plea and determining appellant's sentence. Based upon the plea hearing, the written guilty plea, and the written plea agreement, the court determined appellant's plea was made knowingly and voluntarily.
 {¶ 7} As a result, appellant was convicted of the counts specified in his written guilty plea, and the court sentenced appellant in accordance with the recommended sentence. Specifically, appellant was sentenced to eight to fifteen years of actual incarceration on the count of felonious assault, with a consecutive three-year term of actual incarceration on the firearm specification. On the two counts of attempted aggravated murder, the court imposed two seven to twenty-five year terms of actual incarceration, which were to run concurrently to the felonious assault term of incarceration. Finally, the court imposed a one-year term of incarceration for the count of breaking and entering, which was to run concurrently to the felonious assault term of incarceration.
 {¶ 8} On October 26, 2001, appellant filed a motion to withdraw his guilty plea. Appellant's motion to withdraw maintained that, based upon modifications to the Adult Parole Authority ("APA") guidelines, the parole board, on December 10, 1999, denied his parole after serving 103 months of incarceration and set his next parole eligibility hearing for December 2009. The motion to withdraw argued that the parole board's denial of parole, and extended date for a parole eligibility hearing, violated his plea agreement with the state. Thus, appellant requested a withdrawal of his guilty plea.
 {¶ 9} Appellant filed the deposition testimony of David Norris ("Mr. Norris"), the former head prosecutor of Portage County. Mr. Norris conducted appellant's plea negotiations and obtained appellant's plea agreement. He testified that although parole eligibility was a major concern for appellant, the state was unable to promise appellant a specific date of parole, as the plea agreement could not bind the APA. Mr. Norris further disclosed that the state agreed to refrain from sending a letter of recommendation to the parole board when appellant became eligible for parole.
 {¶ 10} On March 17, 2003, a hearing was held on appellant's motion to withdraw his guilty plea. Appellant testified that he believed the plea negotiations resulted in an agreement which, dependent upon his behavior in prison, would require his parole within ten years of his initial incarceration. Appellant further testified to his exemplary behavior during his incarceration and provided evidence of his participation in various educational and community based programs.
 {¶ 11} William Whitaker ("Mr. Whitaker"), appellant's attorney at the withdrawal hearing, and attorney at the time of the plea negotiations, also provided testimony. Mr. Whitaker testified that appellant's plea agreement was made pursuant to former APA guidelines. He stated that under the former guidelines appellant would have been paroled within ten years of his incarceration, dependent on good behavior. However, due to changes to the APA guidelines, appellant's incarceration was extended beyond ten years. Mr. Whittaker also testified that the state agreed to withhold any recommendation letter regarding appellant's parole eligibility.
 {¶ 12} On April 21, 2004, appellant filed a renewed motion for specific performance of plea agreement or, in the alternative, to vacate the plea. Appellant's renewed motion argued that the state breached the plea agreement by issuing a written recommendation to the APA proposing the denial of his parole. In support of this contention, appellant attached a March 12, 1992 letter from Mr. Norris stating that, pursuant to the plea negotiations, the Portage County Prosecutor's Office would not send a recommendation to the APA. Appellant also attached a letter dated September 13, 1999, from the Portage County Prosecutor to the APA, which recommended that appellant not be released on parole.
 {¶ 13} On June 22, 2004, the trial court overruled appellant's motion to withdraw his guilty plea. From this judgment, appellant filed a timely notice of appeal and now sets forth the following two assignments of error:
 {¶ 14} "[1.] The trial court erred in overruling Appellant's motion for specific performance, or in the alternative for a new trial, because the state of Ohio unequivocally and admittedly violated the terms of the plea agreement upon which Appellant relied in entering pleas of guilt.
 {¶ 15} "[2.] The trial court erred in overruling Appellant's original motion for a new trial because the Adult Parole Authority, as an agent of the state, violated the plea agreement upon which Appellant relied in entering the plea in this cause by refusing to consider him for parole under the Guidelines in effect at the time he entered the plea and upon which he relied in entering that plea."
 {¶ 16} Under his first assignment of error, appellant contends that the trial court erred in overruling his motion for specific performance or in the alternative to vacate his plea. Specifically, appellant argues that the state violated the terms of the plea agreement predicated upon the prosecutor's letter recommending that his parole be denied. Appellant also maintains that specific performance was a proper remedy. Therefore, appellant concludes that the trial court should have withdrawn his plea and dismissed the charges.
 {¶ 17} A negotiated plea agreement is essentially a contract between the state and the defendant. State v. Whiteman, 11th Dist. No. 2001-P-0096, 2003-Ohio-2229, at ¶ 38. Accordingly, "the terms of a given plea agreement must be ascertained before it can be determined whether a party breached the agreement." State v. Olivarez (Mar. 31, 1999), 11th Dist. No. 97-L-288, 1999 Ohio App. LEXIS 1434, at 8. When the terms of the plea agreement have been established and the trial court determines that the state breached the agreement, the court has the discretion to allow the defendant to withdraw his plea or order the state to specifically perform its obligation. Whiteman at ¶ 38. See, also, Statev. Mathews (1982), 8 Ohio App.3d 145, 146.
 {¶ 18} In U.S. v. Martinez (C.A.6, 2001), 16 Fed. Appx. 410, 412, the defendant entered a plea agreement that resulted in his guilty plea to conspiracy to distribute marijuana. Prior to introducing the written plea agreement in open court, the government prosecutor issued a letter to defendant's counsel outlining the plea agreement. Id. The letter specifically stated that the government agreed to "take no position on [Martinez's] role in the offense." Id. However, the written plea agreement submitted with the court made no mention of the government's promise to refrain from taking a position on the defendant's role in the offense. Id. The written plea agreement also included an integration clause which stated, "this agreement incorporates the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant." Id.at 413.
 {¶ 19} During the sentencing hearing, to support a penalty enhancement, the government disputed the defendant's characterization of his role in the offense. Id. at 412. After the court enhanced the defendant's penalty, he appealed and argued that the government breached the plea agreement. Id.
 {¶ 20} On appeal, the Martinez court noted that, per Santobello v. NewYork (1971), 404 U.S. 257, 262, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." But the Martinez court further noted that it is impossible for a court to properly administer a plea agreement if it consists of secret terms known only to the parties. Id. at 413, citing Baker v.United States (C.A.6, 1986), 781 F.2d 85, 90. Thus, the Martinez court held that when the parties have inserted an integration clause into the plea agreement, such clause prevents a criminal defendant from asserting that the government breached additional terms not contained in the written plea agreement. Id. at 414.
 {¶ 21} Here, neither the written plea agreement nor the written guilty plea referenced a promise by the state to withhold a recommendation from the parole board. To the contrary, appellant's guilty plea stated he had been advised by his attorney of the plea agreement and that he "accepted those negotiations as his own." The written guilty plea also stated that no additional promises were made to secure the guilty plea. Likewise, the written plea agreement stated that it represented a "complete" summation of the agreement.
 {¶ 22} Furthermore, at the change of plea hearing, the following discussion occurred after the court read the written plea agreement into the record:
 {¶ 23} "The Court: Now, have you been promised anything other than what I have been told here in this Court Room today to secure a plea of guilty.
 {¶ 24} "[Appellant]: No."
 {¶ 25} Based upon the written plea agreement, written guilty plea, and appellant's testimony, it is clear that the plea agreement was fully integrated and did not include a promise to withhold a recommendation from the parole board.
 {¶ 26} Thus, the trial court did not err by overruling appellant's motion for specific performance, or in the alternative to vacate his plea, as the promise to withhold a recommendation was not part of the plea agreement placed upon the record. See, e.g., Martinez; United States v.Herrera (C.A.6, 1991), 928 F.2d 769, 771, (Defendant was not allowed to establish the existence of a separate agreement where neither defendant nor his attorney mentioned any additional terms when asked about their understanding of the written plea agreement submitted to the court.);Barker at 90, (holding that "a defendant's plea agreement consists of the terms revealed in court."); United States v. Johnson (C.A.6, 1992),979 F.2d 396. Appellant's first assignment of error is without merit.
 {¶ 27} Under his second assignment of error, appellant argues that the trial court erred by denying his original motion to withdraw the guilty plea. Appellant argues that the APA, as an agent of the state, is bound by the parties' plea agreement. He contends that changes to the APA guidelines rendered the plea agreement's parole eligibility promise meaningless and resulted in a breach of the plea agreement. Accordingly, appellant concludes that withdrawal of his guilty plea is the only available remedy.
 {¶ 28} In support of his argument, appellant relies upon Layne v. OhioAdult Parole Authority, 97 Ohio St.3d 456, 2002-Ohio-6719. Such reliance is misplaced.
 {¶ 29} In Layne, the Ohio Supreme Court resolved "whether the APA breaches a plea agreement when it assigns an inmate for purposes of parole eligibility, an offense category score based on the alleged underlying criminal activity rather than on the offense or offenses of which the inmate was convicted." Id. at ¶ 23. The defendants in Layne
had entered plea agreements with the state and were convicted of various crimes in accord with the agreements. Nevertheless, the APA denied parole based upon alleged criminal activity outside of the plea agreement convictions.
 {¶ 30} The Court held that "in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction." Id. at ¶ 28. In doing so, the Court determined that the APA had breached the plea agreements. Id.
 {¶ 31} In the instant case, appellant fails to present any evidence establishing the APA's failure to evaluate his parole eligibility based only upon the convictions resulting from the plea agreement. Instead, appellant merely argues that the revised guidelines were not contemplated by the plea agreement and, therefore, the APA's evaluation under the revised guidelines resulted in a per se breach of the agreement.
 {¶ 32} The Court's holding in Layne did not stand for the proposition that the APA's use of the revised guidelines represented a breach of the plea agreements. Rather, the Layne Court held that when applying the new guidelines, the parole board's basis for determining an offense category score was restricted to the defendant's convicted offenses. Thus, Layne
is inapplicable to the case at bar.
 {¶ 33} Also, a careful examination of the plea agreement fails to show that the state attempted to restrict the APA's wide-ranging discretion with respect to parole eligibility. Id. at ¶ 28. In short, the state made no promise to appellant regarding when or if he would be paroled, or what guidelines would be applied by the APA. State v. Bush, 11th Dist. No. 2004-T-0003, 2005-Ohio-1898, ¶ 23. See, also, State v. Calhoun,
11th Dist. No. 2001-L-021, 2002-Ohio-3371, at ¶ 23, (The written plea agreement failed to indicate that the defendant's release or the guidelines to be used by the APA for parole eligibility were terms of the agreement and, therefore, the plea agreement was not breached.).
 {¶ 34} The law in criminal proceedings as to plea agreements is hardened and unchanged. Unfortunately, there was nothing placed upon the record at the plea hearing that afforded appellant his requested relief in this criminal appeal. Thus, appellant's second assignment of error is without merit.
 {¶ 35} In addition, it is clear that the new APA guidelines have extended appellant's time in which he is eligible for parole. However, his remedy is not to be found in vacating a plea agreement by alleging defects that were not before the court or made part of the record. Rather, the proper remedy is in the same vein as the remedy afforded inLayne. Specifically, if the state had breached its agreement with appellant post plea, he may be entitled to a civil declaratory judgment.
 {¶ 36} Thus, appellant's motion to withdraw his guilty plea was not a proper remedy in this situation. State v. Hall, 11th Dist. No. 2003-T-0114, 2004-Ohio-6471, at ¶ 53. The appropriate remedy to address the application of parole guidelines is a civil declaratory judgment. Id. at ¶ 54. For this additional reason, appellant's second assignment of error is without merit.
 {¶ 37} Based upon the foregoing analysis, appellant's first and second assignments of error are without merit. We hereby affirm the judgment of the trial court.
Ford, P.J., concurs, O'Neill, J., dissents with Dissenting Opinion.