*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHAWN SMITH,

               *Petitioner-Appellant,*

       *v.*

CARL ANDERSON,

               *Respondent-Appellee.*

No. 09-3284

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-02923—Christopher A. Boyko, District Judge.

Argued: December 9, 2010

Decided and Filed: February 11, 2011

Before: MARTIN and SILER, Circuit Judges; BELL, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** William T. Whitaker, Jr., Akron, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** William T. Whitaker, Jr., Andrea L. Whitaker, Akron, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

BELL, District Judge. In this habeas case, Petitioner-Appellant Shawn Smith asks us to allow him to withdraw his plea of guilty or to remand his case for resentencing on the basis of a broken promise by the State of Ohio. Though made during plea

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

negotiations, the promise was not contained in the fully integrated, written plea agreement; Petitioner disavowed the existence of the promise in open court; and Petitioner appears not to have even known about the promise until well after his plea was entered. Because this Court declines to hold that failing to enforce such a promise is an unreasonable application of clearly established federal law as determined by the Supreme Court, we **AFFIRM**.

## I. Background

### A.    Factual History

The underlying facts of this case are not in dispute. Petitioner married his fifteen-year-old, pregnant girlfriend in 1990. Their daughter was born with serious medical problems and died five months after birth, never having left the hospital. Shortly thereafter, Petitioner's wife began seeing another man. Petitioner was overwhelmed by these events, and in June of 1991, he broke into the house next door to his wife's and waited for her to come out. When she came outside with the man she was seeing, Petitioner drew a small caliber handgun and shot each of them in the head. Miraculously, both were treated and released from the hospital within a few days, apparently without serious permanent injury.

There being little question as to responsibility, Petitioner was indicted by a state grand jury and entered into a lengthy plea negotiation with the prosecutor, who wanted to avoid a highly publicized and emotionally-charged trial. The result of the negotiations was a written plea agreement, filed with the trial court, by which Petitioner agreed to plead guilty to two counts of attempted aggravated murder, one count of felonious assault with a firearm specification, and one count of breaking and entering. In exchange for Petitioner's guilty plea, the state agreed to forego prosecuting Petitioner on unrelated burglary charges and to dismiss several pending misdemeanor charges. The written plea agreement presented to, and accepted by, the trial court does not include any additional promises by either party and states that it represents a complete summation of the agreement. However, the parties now agree that during the course of plea

negotiations, the prosecutor promised Petitioner's counsel that the prosecutor's office would not send any letters of recommendation to the Parole Board when Petitioner became eligible for parole.[1] The parties also agree that a new prosecutor later broke that promise.[2]

As clear as the evidence of the broken promise is now, it is equally clear that the trial court had no knowledge of this secret, off-the-record exchange when it accepted Petitioner's guilty plea. Indeed, all evidence on the record militated against the existence of any promises outside of the plea agreement, and the trial court did everything in its power to ensure that none existed. Petitioner's change of plea hearing of March 12, 1992, began with a reading of a written summary of the plea negotiations into the record, followed by an extended discussion of its meaning. Again, the only promises discussed were of the state's dropping some charges in exchange for Petitioner's guilty pleas as to others. During the subsequent plea colloquy, the court asked Petitioner whether he had "been promised anything other than what I have been told here in this Court Room today to secure a plea of guilty," and Petitioner assured the court that he had not. In Petitioner's written guilty plea executed moments earlier, he stated that, "I have been fully advised by my attorney of the Criminal Rule 11(F) plea negotiations which have also been stated in open court . . . ." In accepting this plea, the court noted that "this was a negotiated plea pursuant to Criminal Rule 11(F) and the underlying agreement upon which the plea was based was stated on the record in open Court, which agreement was approved by the Court." Based on the plea colloquy, the written plea agreement, the attorneys' summary of plea negotiations, and the written plea of guilty, the trial court accepted the plea.

---

[1] In a letter to Petitioner's counsel dated March 12, 1992, the Portage County Prosecutor stated that, "[p]ursuant to our Rule 11 F plea negotiations, it is the position of the Portage County Prosecutor's Office that no letters of recommendation will be sent to the Parole Board with reference to Shawn Smith when he becomes eligible for Parole."

[2] In a letter to the Parole Board dated September 16, 1999, the new Portage County Prosecutor stated that, "it is the position of the Portage County Prosecutor's Office that Mr. Smith should serve the balance of his sentence and *NOT* be considered for early release/clemency."

**B.     Procedural History**

After the Parole Board denied him parole in December of 1999, Petitioner claimed breach of his plea agreement and moved to withdraw his plea. He argued that Ohio's new sentencing guidelines effectively extended his sentence. Following a hearing on the motion, but before a ruling had issued, Petitioner filed a renewed motion in which he contended that the prosecutor had breached the plea agreement by sending a letter of recommendation to the Parole Board. Petitioner requested specific performance of his plea agreement, or, in the alternative, that his plea be vacated. The trial court overruled his motion in a one page opinion.

> Petitioner timely filed a notice of appeal claiming, *inter alia*, that
>
> The trial court erred in overruling [Petitioner's] original motion for specific performance, or in the alternative for a new trial, because the state of Ohio unequivocally and admittedly violated the terms of the plea agreement upon which [Petitioner] relied in entering pleas of guilt.[3]

*State v. Smith*, 2005-Ohio-4899, ¶ 14. In denying this assignment of error, the Ohio Court of Appeals noted that a plea agreement is essentially a contract, and the remedy for the government's breach is either allowing the defendant to withdraw his plea or issuance of an order for specific performance. *Id.* at ¶ 17. However, citing federal law including *Santobello v. New York*, 404 U.S. 257 (1971), the state court found that breach cannot be established by reference to any promise between the parties which was not known to the court. *Id.* at ¶ 20. Since the prosecutor's promise to Petitioner's counsel was unknown to the court and not revealed in the plea agreement, in the written guilty plea, or at the plea colloquy, the Ohio Court of Appeals found it to be unenforceable. Petitioner requested and was denied leave to appeal to the Supreme Court of Ohio.

Ten months after exhausting his state court remedies, Petitioner filed his petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, on grounds similar to those on which he appealed to the state courts. The district

---

[3]Pursuant to this Court's September 23, 2009, order granting in part and denying in part Petitioner's application for a certificate of appealability, this is the only issue which remains before us.

court, too, observed that enforceable plea agreements consist only of the terms revealed in open court. Accordingly, applying the appropriately deferential standard of review to the state court's findings, the district court accepted and adopted the recommendations of the Magistrate Judge and denied the petition on February 6, 2009.

Petitioner filed his notice of appeal to this Court on March 3, 2009. On September 23, 2009, we granted a certificate of appealability on the claim that "his due process rights were violated when the state induced him to plead guilty by promising not to make a parole recommendation and then reneged on that promise."

## II. Analysis

### A.          Standard of Review and Relevant Law

While the question of "[w]hether government conduct has violated a plea agreement is a question of law," *United States v. Martinez*, 16 F. App'x 410, 412 (6th Cir. 2001) (citing *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000)), "[t]he existence of such an agreement is a question of fact," *United States v. Herrera*, 928 F.2d 769, 773 (6th Cir. 1991) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). However, we are not the first court to consider these matters, and we must give due consideration to the determinations of both law and fact made by the courts which preceded us.

The statute governing our review of habeas corpus petitions severely constrains the discretion of this and all other federal habeas courts in reviewing the considered judgments of our colleagues on the state bench. *See* 28 U.S.C. § 2254. Under this statute, as applicable here,[4] we cannot grant a writ of habeas corpus unless the state court decision "involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (internal punctuation omitted). This simple statement places on us three distinct

---

[4]Petitioner does not argue that the state court decision was *contrary* to clearly established federal law as determined by the Supreme Court or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

limitations, each of them substantial.  First, only clearly established federal law "as determined by the Supreme Court of the United States" is sufficient to overturn the considered decisions of the state court.  *See Williams v. Spitzer*, 246 F. Supp. 2d 368, 382 n.12 (S.D.N.Y. 2003) ("Since Congress provided in the [statute] that habeas courts may now look only to Supreme Court decisions as declarative of established federal law, it seems to me that I am not only at liberty to disregard the Second Circuit's due process holding . . . , I am affirmatively commanded to do so . . . .").  Second, the federal law must be "clearly established;" thus we consider only "'the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-661 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Finally, the state court's decision must be "unreasonable."  We "may not issue the writ simply because [we] conclude[] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams*, 529 U.S. at 411.

Likewise, we are not to overturn state courts for failure to follow their own rules unless those failures constitute a violation of due process.  *See Ramos v. Rogers*, 170 F.3d 560, 564 n.2 (6th Cir. 1999) ("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process."  (citing *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) ("Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." (internal quotation marks omitted)).

The parties have agreed that the clearly established Supreme Court precedent that governs review of this case is *Santobello*, which states that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  404 U.S. at 262.

**B.        Discussion**

Here, the state appeals court held that "[b]ased upon the written plea agreement, written guilty plea, and [Petitioner's] testimony, it is clear that the plea agreement was fully integrated and did not include a promise to withhold a recommendation from the parole board. Thus, the trial court did not err by overruling [Petitioner's] motion for specific performance, or in the alternative to vacate his plea, as the promise to withhold a recommendation was not part of the plea agreement placed upon the record." *State v. Smith*, 2005-Ohio-4899, ¶¶ 25-26.  In so holding, the state appeals court relied heavily on previous decisions of this Court, and rightfully so, as this Court "has consistently held that a defendant's plea agreement consists of the terms revealed in open court." *United States v. Johnson*, 979 F.2d 396, 398 (6th Cir. 1992) (citation and internal quotation marks omitted).

In *Martinez*, the government sent a letter to the defendant's attorney wherein the government agreed to "take no position on [the defendant's] role in the offense."  16 F. App'x at 412.  The written plea agreement pursuant to which the defendant pleaded guilty, however, made no mention of that promise.  *Id.*  As here, the defendant alleged a violation of the plea agreement.  The district court denied the writ.  In affirming the district court, we pointed out that "where the parties have inserted an integration clause into the plea agreement, that 'integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself.'" *Id.* (quoting *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000)).  We also quoted *Baker* for the proposition that "'it is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties.'" *Id.* (quoting *Baker*, 781 F.2d at 90).  In *Baker* we also held that "where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court." 781 F.2d at 90.  Similarly, in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), we held that even where both

parties acknowledge the existence of an off-the-record agreement, silence in the face of a question as to the existence of promises outside of the plea agreement "likely would foreclose post-conviction reliance on those promises." *Id.* at 1345. In *Ramos*, we held that the integrity of the plea process itself prevents the enforcement of off-the-record promises which are *denied* in open court by the party which later seeks to enforce them. *See* 170 F.3d at 566 ("[T]he plea colloquy process exists in part to prevent petitioners such as [the defendant] from making the precise claim that is today before us." (emphasis in original)).

Here, all of the relevant factors advocate in favor of limiting Petitioner's plea agreement to that which was revealed to the state court. As in *Martinez,* there was a fully integrated, written plea agreement which did not discuss the promise at issue. As in *Baker*, the parties did not reveal additional terms of the plea agreement when specifically asked to do so by the court, which, as we explained in *Peavy*, forecloses post-conviction reliance on those additional terms. Finally, as in *Ramos*, Petitioner specifically *denied* that there were any additional terms.

Moreover, even if this Court were to adopt a rule requiring its trial courts to enforce off-the-record plea agreements, due process would not require the State of Ohio to do the same. *See Siegel v. New York*, 691 F.2d 620, 621 (2nd Cir. 1982) ("New York State's policy of recognizing only on-the-record plea bargains comports with due process."). As demonstrated in this case, it appears that the State of Ohio has elected to adopt a rule that the only enforceable plea agreements are those which are presented to, and accepted by, the trial court judge. This is not unusual, it comports with the State's rules of criminal procedure, and, indeed, it comports with our own rules of criminal procedure. *See* Ohio Crim. R. 11(F) ("When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court."); Fed. R. Crim. P. 11(c)(2) ("The parties must disclose the plea agreement in open court when the plea is offered, unless the court for good cause allows the parties to disclose the plea agreement in camera."). The practice of requiring plea

agreements to be disclosed to the court has also been recognized and accepted by the Supreme Court. *See United States v. Hyde*, 520 U.S. 670, 677-678 (1997) ("If the court accepts the agreement and thus the Government's promised performance, then the contemplated agreement is complete and the defendant gets the benefit of his bargain. But if the court rejects the Government's promised performance, then the agreement is terminated and the defendant has the right to back out of his promised performance (the guilty plea), just as a binding contractual duty may be extinguished by the non-occurrence of a condition subsequent."). In fact, the Supreme Court seems to have had this in mind when it decided *Santobello*, the case which both parties here have recognized as the clearly established Supreme Court precedent on this issue. *See Santobello*, 404 U.S. at 261-62 ("[T]he sentencing judge must develop, *on the record*, the factual basis for the plea. . . . [I]f [the plea] was induced by promises, the essence of those promises must in some way be made known." (emphasis in original)). Accordingly, we conclude that the state court decision did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court, and it must be affirmed.[5]

Nonetheless, we are very troubled by the magnitude of the agreement which was not placed on the record, and we are even more troubled by the fact that the State of Ohio violated that agreement. The societal benefits attendant to plea bargaining depend on defendants being able to rely upon the promises they receive. It is for that reason that the Supreme Court has been clear that the time for backroom, off-the-record, shadow compacts between prosecutor and defense counsel is long past. Counsel no longer has any reason to hide from the court the plea agreement, in its full, inglorious detail. It is equally clear that it would be no defense that the promise here was made by one prosecutor and broken by another. *See Santobello*, 404 U.S. at 262 ("The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right

---

[5]We also note that there may be some question as to whether Petitioner was even aware of the Prosecutor's promise. In a hearing before the state trial court, he explicitly stated that he "was not aware" that the guarantee not to send letters opposing parole was part of his plea agreement. If that was indeed the case, we would be hard pressed to find that it could "be said to be part of the inducement or consideration" to plead guilty, as required by *Santobello*. 404 U.S. at 262.

hand is doing' or has done."). As such, our holding in this matter is necessarily limited. The outcome may have been different, not only in this Court, but in those below, had there been any sign that the prosecutor's office was attempting to deceive Petitioner or to take advantage of the fact that an off-the-record agreement might not be enforced. *See United States v. Ykema*, 887 F.2d 697, 699 (6th Cir. 1989) ("[T]he government should scrupulously avoid any behavior that would constitute trickery."). So too, and as noted above, the outcome may have been different had the state court not been scrupulous in informing Petitioner of his rights and doing everything in its power to ensure that the plea was freely and voluntarily given, with full knowledge of its consequences.

### III. Conclusion

For the reasons set forth above, we **AFFIRM** the judgment of the district court.