**Katherine Sue DENDEL, Petitioner–Appellant,**

v.

**Heidi E. WASHINGTON; Stephen Robinson, Respondents–Appellees.**

No. 15–2000.

United States Court of Appeals, Sixth Circuit.

May 9, 2016.

BEFORE: MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

PER CURIAM.

Katherine Sue Dendel, a former Michigan state prisoner, appeals through counsel a district court judgment denying her petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.

In 2003, Dendel was convicted of second-degree murder at a bench trial and was sentenced to 90 to 180 months of imprisonment. On direct appeal, she raised a claim of ineffective assistance of trial counsel, and the matter was remanded to the trial court for an evidentiary hearing. At the conclusion of the hearing, the trial judge denied the claim. The Michigan Court of Appeals, in a divided opinion, held that ineffective assistance of counsel had been established and vacated the conviction. *People v. Dendel*, No. 247391, 2006 WL 2000148 (Mich.Ct.App. July 18, 2006). The Michigan Supreme Court, also in a divided opinion, reversed that decision and reinstated the conviction. *People v. Dendel*, 481 Mich. 114, 748 N.W.2d 859 (2008). The case was remanded for consideration of other issues. On remand, the Michigan Court of Appeals held that a violation of the Confrontation Clause was harmless error and affirmed the conviction. *People v. Dendel*, 289 Mich.App. 445, 797 N.W.2d 645 (2010). The Michigan Supreme Court declined further review.

In this petition for a federal writ of habeas corpus, Dendel asserted her claims of ineffective assistance of counsel and violation of the Confrontation Clause, as well as a claim of insufficient evidence. The district court denied the petition but granted a certificate of appealability as to the first two claims. Dendel did not seek a certificate of appealability on the claim of insufficient evidence. In her brief, she argues that her counsel was ineffective in failing to investigate the cause of the victim's death and to call an expert witness, and that her right to confrontation was denied when a doctor was permitted to testify regarding lab results of tests that he did not personally perform.

The evidence showed that Dendel was the caregiver for her common-law husband of nearly thirty years, Paul Burley, who suffered from hepatitis, herpes, chronic obstructive pulmonary disease, throat cancer, HIV, neuropathy, epilepsy, impaired vision, and dementia. Dendel herself was diabetic, and she self-administered insulin injections twice a day. Dendel had become overwhelmed by the responsibility of caring for Burley, who became increasingly uncooperative. She received no help from his family, and he was neither old enough nor ill enough to qualify for residential care. The day before his death, a visiting nurse had quit due to Burley's uncooperativeness. During that night,

Dendel called the police because Burley was running around their apartment with a knife, but when the police arrived he was sitting calmly, and they declined to take him to the hospital.

Dendel claimed that Burley's condition was normal the next day until lunchtime. When she checked on him a few hours later, however, he was slumped over dead. Dendel did not call the police, but called a friend who came over and called the police. Despite talking to Burley's family members several times over the following week, Dendel did not tell them that he had died.

An autopsy was performed, with the initial finding of death from natural causes. However, Burley's sister, when finally informed of his death, reported to the police that Dendel had told her the week before Burley's death that she was overwhelmed and was considering injecting Burley with insulin. Dr. Pacris, who performed the autopsy, then asked for additional lab tests. He testified that, on reexamination, he concluded that death was due to an insulin overdose. He reported that the decedent's brain and kidneys showed signs of deterioration indicating that he had been in a coma for twelve hours before death. This would indicate that Dendel administered the insulin shortly after the police left during the night, and that Burley would have been in a coma thereafter, not the normal condition that she reported the following day. The head of the laboratory that performed the testing, Dr. Evans, testified that the lab results showed a zero glucose level, consistent with being injected with insulin. He also reported that there was a high level of morphine, which might have been lethal in someone who had not built up a tolerance to the drug. The defense argued that death could have been due to a combination of the numerous medications the decedent was taking, or that he could have self-administered insulin, although there was also evidence that he would not have been physically capable of giving himself an injection. The trial court judge found Dendel guilty of second-degree murder.

At the subsequent hearing on the claim of ineffective assistance, trial counsel testified that he had asked a friend of his, who was a doctor, for a referral, and had then called the recommended doctor and talked to him about the case, although he kept no notes of the conversation and did not give the doctor any of the decedent's medical records. Trial counsel indicated that Dendel had insisted that he pursue a defense that the victim self-administered an overdose, and therefore he concluded that he did not need to challenge the state's expert opinion of the cause of death. Appellate counsel presented the testimony of an expert, who challenged the conclusions of Dr. Pacris and opined that the cause of death could have been a combination of the drugs that Burley was taking. However, Dr. Pacris could not rule out an insulin injection as the cause. Dr. Pacris defended his original testimony that the changes in the brain and kidneys indicated that Burley had been in a coma due to insulin shock.

Dendel argues that her trial counsel was ineffective in failing to investigate the cause of death and to call an expert witness. To state a claim of ineffective assistance of counsel, Dendel is required to show that her counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The district court found that the state court's conclusion that Dendel had not demonstrated prejudice from the alleged ineffective assistance was

reasonable. *See Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

The parties argue over the reasonableness of counsel's performance. We have held, however, that a lawyer who fails to adequately investigate information that might demonstrate his client's factual innocence or that might raise a question of guilt renders deficient performance. *Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir.2007). In fact, it is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

Here, Dendel's trial counsel did not present any evidence of an independent investigation. Although trial counsel testified that he spoke to a friend, Dr. Burgess, and asked for a referral who could provide insight into the cause of Burley's death, counsel could not recall the exact details of the conversations and kept no notes of what he discussed with either Dr. Burgess or the referral, Dr. Halsey. Dr. Halsey was not given any of Burley's medical records to review, yet he agreed with the prosecution's medical expert's opinion on the cause of death based on one phone conversation with trial counsel. Without attempting to corroborate Dr. Halsey's opinion by later providing him with Burley's medical records, trial counsel decided that investigating further into the cause of death was unnecessary. We have made clear that an attorney cannot hire an expert, give him whatever evidence he happens to have on hand (but not the evidence the client pointed to) and accept the report without further discussion. *Couch v. Booker*, 632 F.3d 241, 246 (6th Cir.2011). A reliance on uncorroborated evidence

dealing with a material issue, such as the cause of death in a murder trial, constitutes as deficient performance. *See id.*

As to prejudice, the second prong of an ineffective assistance claim, the trial judge, who presided over the post-conviction evidentiary hearing, concluded that there was no reasonable probability that the expert's testimony would have altered the result of the trial, given the weight of the contrary evidence to demonstrate prejudice. However, a reasonable probability exists where there is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In *Rompilla*, the Supreme Court found that the defendant was prejudiced by the counsel's failure to obtain and investigate court files about Rompilla's prior conviction. 545 U.S. at 383, 125 S.Ct. 2456. After concluding that the attorney's failure constituted deficient performance, *id.* at 383, 125 S.Ct. 2456, the Court found prejudice. "If the defense lawyers had looked in the file," the Court reasoned, "they would have found a range of mitigation leads that no other source had opened up." *Id.* at 390, 125 S.Ct. 2456. "Further effort would presumably have unearthed much of the material post-conviction counsel found, including testimony from several [potential witnesses], whom trial counsel did not interview." *Id.* at 391, 125 S.Ct. 2456. "This evidence," the Court concluded, "adds up to a mitigation case that bears no relation to the [minimal mitigation evidence] actually put before the jury, and although we suppose it is possible that a jury could have heard it all and still have decided [as it did], that is not the test." *Id.* at 393, 125 S.Ct. 2456.

Similarly, here, trial counsel's failure to adequately investigate into the cause of Burley's death was prejudicial to Dendel's defense. There is a reasonable probability that had Dendel's trial counsel mounted

the available expert evidence that Burley's death could have been caused by a combination of drugs as her appellate counsel did, it would have, at a minimum, raised doubt about Dendel's guilt and undermined the confidence in her conviction or sentence. *See id.* The Michigan Supreme Court reasoned that Dendel was not prejudiced because the prosecution's medical expert's theory that Burley died from an insulin injection still would not have ruled out either of Dendel's defense arguments: that Burley died of natural causes or killed himself. However, evidence rebutting the prosecution's insulin-injunction theory of causation would have at least undermined confidence in the medical evidence used to convict her, which is the test for reasonable probability. *See id.* Therefore, the state court's rejection of the claim of ineffective assistance of counsel was contrary to clearly established Supreme Court precedent. *See Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Dendel's second claim is that she was denied the right to confrontation by the testimony of the head of the laboratory regarding test results that he did not personally perform. The state court agreed that a violation had occurred but concluded that it was harmless error. Confrontation Clause violations are properly subjected to harmless error review. *Vasquez v. Jones,* 496 F.3d 564, 574 (6th Cir.2007). The factors considered in deciding whether a confrontation error was harmless include whether the evidence was cumulative, whether it was corroborated, the extent of cross-examination permitted, and the strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In this case, the evidence to which Dendel objects is the finding that the glucose level was zero, which was consistent with an insulin injection. The district court properly not-

ed that this evidence was cumulative, because it was also reported by Dr. Pacris, and that it was not inconsistent with the theory of the defense. Dendel does not raise any complaint about the extent of cross-examination that was permitted. Finally, the strength of the prosecution's case, including all of the circumstantial evidence, weighs in favor of finding the confrontation violation harmless.

Accordingly, although Dendel's confrontation clause claim fails, de novo review of the district court's decision supports the conclusion that the state courts' rejection of Dendel's ineffective assistance claim was contrary to or an unreasonable application of clearly established law. *See Robins v. Fortner,* 698 F.3d 317, 328 (6th Cir.2012). Therefore, we **REVERSE** the denial of this petition for habeas corpus relief based on Dendel's claim of ineffective assistance of counsel.

SUHRHEINRICH, Circuit Judge, concurring in part and dissenting in part.

While I agree with the majority's resolution of the Confrontation Clause issue, I disagree with its conclusion that the Michigan state courts' rejection of Dendel's ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law"—the standard state prisoners must overcome to receive habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1). This standard "severely constrains" our review. *Smith v. Anderson,* 632 F.3d 277, 281 (6th Cir.2011). For ineffective assistance claims, the clearly established federal law is of course *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires a showing that counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. But on AEDPA review, "the pivotal question is

whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Because the *Strickland* standard is a general one, the range of reasonable applications is substantial. *Id.* at 105, 131 S.Ct. 770. In fact, where both *Strickland* and § 2254(d) apply, our analysis should be "doubly deferential." *Woods v. Donald*, —— U.S. ——, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015). In my view, the majority opinion does not adequately account for these principles and, in doing so, reaches the wrong result.

The majority finds prejudice because Dendel's counsel failed to investigate and call an expert witness who could testify to an alternative cause of death. The Michigan Supreme Court, however, affirmed the state trial court's conclusion that Dendel was not prejudiced by this failure because the new expert testimony presented at her post-conviction *Ginther* hearing did not establish a reasonable likelihood of a different result at trial. Our rule for habeas petitions is to give these state court decisions "the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)). The majority instead (and in spite of AEDPA) appears to have engaged in a de novo review of Dendel's ineffective assistance claim. But it is the state court decisions we must examine to adjudicate Dendel's claim, not merely our own independent evaluation of the underlying evidence.

After the state trial court denied Dendel's motion for a new trial, the Michigan Court of Appeals remanded the case for a *Ginther* hearing to determine whether Dendel's trial attorney rendered ineffec-

tive assistance. *See People v. Dendel*, 481 Mich. 114, 748 N.W.2d 859, 863 (2008). At the *Ginther* hearing, the state trial judge heard new defense expert testimony from Dr. Simson. Dr. Simson contested the prosecution's theory that Burley died of hypoglycemic shock triggered by an insulin overdose and proposed that Burley actually died of a multiple-drug (primarily morphine) overdose. Dr. Simson conceded, however, that he could not rule out the possibility that Burley died of an insulin injection. The trial court also heard the prosecution recall its expert, Dr. Pacris, who defended his original testimony against Dr. Simson's critiques. Dr. Pacris also rejected a morphine overdose as the cause of death due to Burley's history of morphine use. At the close of the hearing, the state trial judge determined that defense counsel's performance was objectively reasonable and, furthermore, that the outcome of the trial would not have been different had the defense offered Dr. Simson's testimony because "there was a lot of other evidence" besides the prosecution's expert pointing to Dendel's guilt. *Id.*

In reviewing the conflicting expert testimony presented in Dendel's *Ginther* hearing, the Michigan Supreme Court reasonably concluded that Dr. Simson's testimony would not have been substantially likely to produce a different result at trial. *Id.* at 865–68 & n. 17. The Michigan Supreme Court reasonably upheld the trial court's implicit credibility finding that "Dr. Simson was not more credible than the prosecution's experts." *Id.* at 867. The court highlighted that Dr. Pacris strongly defended his position that Burley died of hypoglycemic shock against Dr. Simson's challenges. *Id.* The court further emphasized that Dr. Simson did not respond to Dr. Pacris's testimony and "Dr. Simson conceded the possibility that Burley had died from insulin overdose." *Id.* at 868. In addition, the court explained that Dendel *herself* made state-

ments to the police that Burley had injected himself with insulin, and these statements supported Dr. Pacris's theory of death—not Dr. Simson's. *Id.* Lastly, the court outlined the extensive circumstantial evidence supporting the guilty verdict, including Dendel's inculpatory statements, her difficulty with Burley in the months leading up to his death, her opportunity and motive to inject Burley with insulin around 4 a.m.—the time Dr. Pacris testified Burley fell into a coma, and Dendel's suspicious behavior following Burley's death. *Id.* at 868–70.

The showing required to satisfy *Strickland*'s prejudice prong is well-established. The question is not "whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have different." *Harrington*, 562 U.S. at 111, 131 S.Ct. 770 (internal citations omitted). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112, 131 S.Ct. 770.

It strains the notion of deference to read the Michigan state court decisions as an unreasonable application of this flexible legal standard. In fact, the Michigan Supreme Court's thorough analysis reveals solid ground for finding a lack of prejudice. The Michigan Supreme Court assessed the newly uncovered expert testimony and reasonably concluded, based on the weight of the competing expert testimony and circumstantial evidence, that there was not a reasonable probability that Dendel would have been acquitted even with the new expert testimony. *See Sears v. Upton*, 561 U.S. 945, 955–56, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010) (per curiam) (explaining that a proper analysis of prejudice under *Strickland* requires a "probing and fact-specific analysis" whereby the state court takes into account "the newly uncovered evidence" along with the evidence introduced during trial to assess whether there is a reasonable probability of a different result).

Despite the majority's suggestion, the Michigan Supreme Court decision is not contrary to or an unreasonable application of *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). The *Rompilla* Court found prejudice because the newly-discovered evidence in that case produced "a mitigation case that [bore] no relation to the few naked pleas for mercy actually put before the jury." 545 U.S. at 393, 125 S.Ct. 2456. The Michigan Supreme Court, in contrast, held that Dr. Simson's expert testimony did not substantially alter the case presented to the trial court in the form of Dr. Pacris's expert testimony and the significant additional evidence supporting Dr. Pacris's theory of death.

I therefore would affirm the district court's decision denying the petition for a writ of habeas corpus.